Martin E. Rose (Ca Bar # 62558)
Email: mrose@fbtlaw.com
Sean M. Whyte [*Pro Hac Vice Forthcoming*]
Email: swhyte@fbtlaw.com
FROST BROWN TODD, LLC
3500 Maple Avenue, Suite 1200
Dallas, Texas 75219
Telephone: (214) 545-3472
Facsimile: (214) 545-3473

John W. Shaw (CA Bar #82802)
Email: jshaw@sksattorneys.com
SHAW, KOEPKE & SATTER
23326 Hawthorne Boulevard, Suite 320
Torrance, California  90505
Telephone: (424) 738-5561

Attorneys for Defendant
KOI CBD, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALLEY FAUSETT and LEIGH GOOD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KOI CBD, LLC, a California Limited Liability Company,<br><br>Defendant. | Case No.: 2:19-cv-10318-GW-AFMx<br><br>**DEFENDANT KOI CBD, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND MEMORANDUM OF AUTHORITIES**<br><br>Date: March 9, 2020<br>Time: 8:30 a.m.<br>Ctrm.: 9D<br>Judge: Hon. George H. Wu |

i

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 9, 2020 at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D, United States Courthouse, 350 West 1st Street, Los Angeles, CA 90012, Defendant KOI CBD, LLC ("Koi" or "Defendant") will move the Court for an order dismissing with prejudice Plaintiffs CALLEY FAUSETT and LEIGH GOOD's Complaint (ECF No. 1) and each claim alleged therein.

This motion is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), and is based on the following grounds:

1.    Plaintiffs' unsupported legal conclusion that Koi's Products are "illegal" or "illegally labeled" is false;

2.    Plaintiffs fail to plead sufficient facts to show that they are entitled to relief for each of their claims, and their fraud-based claims are not pleaded with the requisite specificity;

3.    Each of Plaintiffs' equitable claims are precluded, as they have an adequate remedy at law;

4.    Plaintiffs' claims are expressly preempted by Federal law for which the United States holds exclusive jurisdiction; and

5.    Plaintiffs' claims are premature, as the FDA has not completed the regulatory rule-making process. This means Plaintiffs' claims should be dismissed or, in the alternative, a stay issued over these proceedings.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities filed concurrently, the pleadings and documents on file in this case, and any such other evidence as may be presented at the hearing on this motion.

///
///

DEFENDANT KOI CBD, LLC'S MOTION TO DISMISS
CASE NO. 2:19-CV-10318-GW-AFMx

Dated: February 7, 2020.                    FROST BROWN TODD LLC


                                            By:  /s/ Martin E. Rose

                                            Martin E. Rose
                                            Sean M. Whyte


                                            SHAW, KOEPKE & SATTER

                                            By:  /s/ John W. Shaw

                                            John W. Shaw

                                            Attorneys for Defendant
                                            KOI CBD, LLC

iii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES .............................................1

I.       INTRODUCTION.............................................................................................1

II.      BACKGROUND................................................................................................3

III.     LEGAL STANDARD .......................................................................................4

IV.      ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED, BECAUSE
THEY ARE BASED ON THE FALSE PREMISE THAT KOI'S PRODUCTS
ARE "ILLEGAL" ........................................................................................................4

         A.       Plaintiffs assert false and unsupported legal conclusions that Koi's
                  Products are illegally labeled and illegally misbranded...........................4

         B.       The FDA's statements are not law ..........................................................5

         C.       Koi's Products are not drugs ...................................................................8

V.       PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR IMPROPER
FACTUAL BASIS.......................................................................................................10

         A.       Plaintiffs improperly plead the factual basis for the UCL claim ...........10

         B.       Plaintiffs improperly plead the factual basis for the FAL claim.............12

         C.       Plaintiffs improperly plead the factual basis for the CLRA claim..........13

         D.       Plaintiffs fail to plead a factual basis to support claims for breach of
                  express warranty in California or Arizona ..............................................14

         E.       Plaintiffs fail to plead a factual basis to support claims for breach of
                  implied warranty of merchantability in California or Arizona ................16

         F.       Plaintiffs fail to plead a factual basis to support an ACFA claim..........19

         G.       Plaintiffs factual basis to support a declaratory judgment fails .............20

VI.      EVEN IF PLAINTIFFS HAD PROPERLY PLEADED CLAIMS UNDER
THE UCL, FAL, AND CLRA, THOSE CLAIMS ARE PRECLUDED BECAUSE
THEY ALSO ALLEGE CLAIMS WHICH PROVIDE AN ADEQUATE
REMEDY AT LAW ....................................................................................................20

VII.     EVEN IF PLAINTIFFS HAD PROPERLY PLEADED THEIR CLAIMS,
THE 2018 FARM BILL EXPRESSLY PREEMPTS THE STATUTES RELIED
ON IN PLAINTIFFS' COMPLAINT .......................................................................21

         A.       Express preemption applies to the 2018 Farm Bill ................................21

         B.       Plaintiffs' proposed application of the statutes invoked in each of
                  Plaintiffs' claims is expressly preempted...............................................22

         C.       Plaintiff's claims are also preempted because the United States holds
                  exclusive jurisdiction to enforce the FD&C ..........................................23

VIII.    EVERY ONE OF PLAINTIFFS' CLAIMS IS PREMATURE AND THE
COURT SHOULD DISMISS PLAINTIFFS' CLAIMS OR, IN THE
ALTERNATIVE, STAY ALL PROCEEDINGS.....................................................23

IX.      CONCLUSION ...............................................................................................25

iv

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ...................................................................4

*Am. Suzuki Motor Corp. v. Superior Court*
    (1995) 37 Cal. App. 4th 1291 ................................................................17

*Andrade v. Pangborn Corp.*,
    No. C 02-3771 PVT, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004)...............17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................... 4, 5, 10, 11, 14, 19

*Becerra v. Gen. Motors LLC*,
    241 F. Supp. 3d 1094 (S.D. Cal. 2017)......................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................4

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)...............................................................23

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)..................................................................6

*Christensen v. Harris Cnty.*,
    529 U.S. 576 (2000)..................................................................7

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ................................................24

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) .................................... 14-15

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012) ...................................12

*CytoSport, Inc. v. Vital Pharms., Inc.*,
    894 F. Supp. 2d 1285 (E.D. Cal. 2012) .....................................7

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ..................................................4

*Essence Imaging, Inc. v. Icing Images LLC*,
    No. 2-13-cv-5449-CAS(PLAx), 2014 WL 1384028 (C.D. Cal. Apr.
    9, 2014) ...................................................................................................13

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
    503 U.S. 60 (1992)...................................................................................20

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002).................................................................................21

*Hamilton v. TBC Corp.*,
    328 F.R.D. 359 (C.D. Cal. 2018)............................................................15

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................11, 12

*Laparade v. Ivanova*,
    116 Fed. App'x 100 (9th Cir. 2004) ........................................................21

*Lippitt v. Raymond James Fin. Svcs., Inc.*,
    340 F.3d 1033 (9th Cir. 2003) .................................................................10

*Littlehale v. Hain Celestial Grp., Inc.*,
    No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012)..................15

*Loo v. Toyota Motor Sales, USA, Inc.*,
    No. 8:19-cv-00750-VAP, 2019 WL 7753448 (C.D. Cal. 2019) ....................20

*MacRae v. HCR Manor Care Svcs.*,
    No. SACV 14-0715-DOC, 2014 WL 3605893 (C.D. Cal. July 21,
    2014) ........................................................................................................13

*Madrigal v. Hint, Inc.*,
    CV 17-02095-VAP, 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ...............20

*Maneely v. Gen. Motors Corp.*,
    108 F.3d 1176 (9th Cir. 1997) .................................................................15

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016)..................................................12

*Nutrition Distribution, LLC v. IronMag Labs, LLC*,
    723 F. App'x 397 (9th Cir. 2018)............................................................25

*Oddo v. Arcoaire Air Conditioning & Heating*,
   No. 8:15-cv-01985-CAS(Ex), 2017 WL 372975 (C.D. Cal. Jan. 24,
   2017) .................................................................................................17

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) .........................................................23

*Rich v. Bank of Am., N.A.*,
   666 Fed. App'x 635 (9th Cir. 2016) .................................................19

*Salas v. Toyota Motor Sales, U.S.A., Inc.*,
   No. CV 15-8629 FMO (Ex), 2016 WL 7486600 (C.D. Cal. Sept.
   27, 2016) ............................................................................................20

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ...........................................................12

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) ...........................................................20

*Sierra Club v. U.S. EPA*,
   671 F.3d 955 (9th Cir. 2012) .............................................................6

*Snyder v. Green Roads of Fla. LLC*,
   No. 0:19-CV-62342-UU, 2020 WL 42239 (S.D. Fla. Jan. 3, 2020) ..2, 8, 23, 25

*Spann v. J.C. Penney Corp.*,
   307 F.R.D. 508 (C.D. Cal. 2015)......................................................13

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...........................................12

*Stockinger v. Toyota Motor Sales USA, Inc.*, LACV 17-00035-VAP
   (KLSx), 2017 WL 10574372, at *22 (C.D. Cal. Jul. 7, 2017) .................. 20-21

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
   922 F. Supp. 299 (C.D. Cal. 1996) ....................................................7

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ...........................................................24

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) .........................................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................12

*Victor v. R.C. Bigelow, Inc.*,
    No. 13-cv-02976-WHO, 2016 WL 4502528 (N.D. Cal. Aug. 29,
    2016) ..................................................................................13

**Statutes**

7 U.S.C. § 1639o(1) ........................................................................22

7 U.S.C. § 1639r(c)(1),(3)(A)-(B) ....................................................24

7 U.S.C. § 5940 (codification of the Agricultural
    Act of 2014, the "2014 Farm Bill") .......................................1, 7, 21

21 U.S.C. § 301, 321, 337, the "Food, Drug, &
    Cosmetics Act" (FD&C).......................................................10, 23

Agriculture Improvement Act of 2018 (the "2018 Farm Bill"),
    Pub. L. No. 115-334 §§ 10113-10114, 132 Stat. 4490,
    4909-14 (2018)..............................................................1, 21, 22, 24

**Other Authorities**

21 C.F.R. § 10.115(d)(1).....................................................................7

21 C.F.R. § 314 Title 21 – Food & Drugs. ..........................................8

https://www.fda.gov/news-events/press-
    announcements/fda-approves-first-drug-
    comprised-active-ingredient-derived-marijuana
    -treat-rare-severe-forms (last visited Jan. 29, 2020)........................9

FED. R. CIV. P. 8(a)

FED. R. CIV. P. 9(b)...................................................................11, 12

FED. R. CIV. P. 12(b)(6)..............................................................2, 4, 23

https://www.fda.gov/inspections-compliance-enforcement-and-
    criminal-investigations/compliance-manuals/regulatory-
    procedures-manual (last visited Feb. 6, 2020)...............................6

https://www.fda.gov/news-events/press-announcements/statement-
     fda-commissioner-scott-gottlieb-md-signing-agriculture-
     improvement-act-and-agencys (last visited Jan. 29, 2020) ...............................2

https://www.fda.gov/news-events/public-health-focus/fda-regulation-
     cannabis-and-cannabis-derived-products-including-cannabidiol-
     cbd (last visited Jan. 29, 2020) .........................................................6

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Calley Fausett and Leigh Good ("Plaintiffs") filed a purported nationwide class action alleging that Koi CBD, LLC ("Koi")—a hemp-extract company producing the highest-quality CBD products—sold illegal products to consumers. Plaintiffs ground their Complaint on the legal conclusion that Koi labeled its products as illegal dietary supplements or illegal misbranded drugs based on recent statements issued by the United States Food and Drug Administration ("FDA") and an FDA Warning Letter sent to Koi. Plaintiffs' legal conclusion is false and fails to state a claim for which relief can be granted.

Plaintiffs attempt to take advantage of the current regulatory uncertainty of cannabidiol ("CBD") extracted from hemp plants. This uncertainty was created when the United States Congress made hemp legal before the FDA determined how or even whether it would regulate hemp-derived products. Importantly, the 2014 Farm Bill made hemp containing not greater than 0.3 percent of delta-9 tetrahydrocannabinol ("THC," the intoxicating compound in the genus *Cannabis*) legal as an agricultural commodity and the 2018 Farm Bill made the transfer of hemp and hemp-derived products across state lines for commercial or other purposes legal. 7 U.S.C. § 5940 (codification of the Agricultural Act of 2014, hereinafter the "2014 Farm Bill"); Agriculture Improvement Act of 2018 (hereinafter, the "2018 Farm Bill"), Pub. L. No. 115-334 §§ 10113-10114, 132 Stat. 4490, 4909-14 (2018). It also puts no restrictions on the sale, transport, or possession of hemp-derived products, such as CBD, so long as those items are produced in a manner consistent with the law. *Id*. In short, hemp and CBD products do not induce intoxication and are explicitly legal to sell under federal law. While the 2018 Farm Bill allowed the FDA to retain jurisdiction over regulating hemp-derived products, the FDA has not made any final regulatory rulings or laws related

1

to hemp extracts.[1]

An uncertain regulatory landscape should not permit Plaintiffs to enforce nonbinding FDA actions as if they have the force of law when they do not. For just these reasons, one Federal District Court has already stayed a CBD class action until the FDA provides binding regulatory rulings on hemp-extract products.[2]

The Complaint alleges consumer-fraud claims,[3] breach of warranty claims,[4] and a request for declaratory judgment.[5] Almost all of Plaintiffs' asserted causes of action rely on the false legal conclusion that Koi's products are illegally labeled or sold.[6] For this reason alone, Plaintiffs' Complaint should be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Plaintiffs' Complaint should further be dismissed with prejudice or stayed on the following grounds:

1.     Plaintiffs' unsupported legal conclusion that Koi's Products are "illegal" or "illegally labeled" is false;

2.     Plaintiffs fail to plead sufficient facts to show that they are entitled to relief for each of their claims, and their fraud-based claims are not pleaded with the requisite specificity;

3.     Each of Plaintiffs' equitable claims are precluded, as they have an adequate remedy at law;

4.     The 2018 Farm Bill expressly preempts the statutes underlying

---

[1] Statement from FDA Commissioner Scott Gottlieb, M.D., on the signing of the Agriculture Improvement Act and the agency's regulation of products containing cannabis and cannabis-derived compounds, https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-signing-agriculture-improvement-act-and-agencys (last visited Jan. 29, 2020).

[2] See Snyder v. Green Roads of Fla. LLC, No. 0:19-CV-62342-UU, 2020 WL 42239, at *6 (S.D. Fla. Jan. 3, 2020).

[3] Plaintiffs' Complaint (ECF No. 1) ("Compl.") ¶¶ 54-68, California's Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200 et seq.; Compl. ¶¶ 69-78, California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500 et seq.; Compl. ¶¶ 79-86, California's Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code § 1750 et seq.; and Compl. ¶¶ 119-135, Violation of Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, et seq.

[4] Compl. ¶¶ 87-94, Breach of Express Warranties, Cal. Com. Code § 2313(1); Compl. ¶¶ 95-102, Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314; Compl. ¶¶ 103-110, Breach of Express Warranties, Ariz. Rev. Stat. § 47-2313, et seq.; and Compl. ¶¶ 111-118, Breach of Implied Warranty of Merchantability, Ariz. Rev. Stat. § 47-2314, et seq.

[5] Compl. ¶¶ 136-143, Declaratory Judgment Act, 21 U.S.C. § 2201.

[6] Plaintiffs' CLRA claim does not rely on the illegality of labeling but fails based on the inadequacy of the facts pled.

2

Plaintiffs' claims; and

5.     Plaintiffs' claims are premature, as the FDA has not completed the regulatory rule-making process. This means Plaintiffs' claims should be dismissed or, in the alternative, a stay issued over these proceedings.

## II.     BACKGROUND

Plaintiffs filed this lawsuit on December 5, 2019 (the "Complaint"). *See* ECF No. 1. Plaintiffs allege that Koi "formulates, manufactures, advertises, and sells" CBD products throughout the United States. Plaintiffs' Complaint, ECF No. 1 ("Compl.") ¶ 3. These products include "CBD Healing Balm," "CBD Vape Oil," "Full Spectrum CBD Tincture," "KOI Lotion," "KOI CBD Gummies," "KOI CBD Infused Shot," "KOI Naturals CBD Spray for Pets," and "KOI CBD soft chews" (collectively, the "Products"). Compl. ¶ 1. Their purported class-action complaint argues that, based on nothing more than mere FDA guidance, Koi's Products are "illegal," mislabeled, and falsely advertised, and that this has caused harm to themselves and the public. They allegedly would not have purchased product from Koi—or would have purchased it but would not have paid as much—if they had known "the truth" about Koi's Products. Compl. ¶¶ 41.

Plaintiffs bring this lawsuit on behalf of "[a]ll persons in the United States who purchased the Products" (the "National Class"), "[a]ll persons in the State of California who purchased the Products" (the "California Subclass"), and "[a]ll persons in Arizona who purchased the Products" (the "Arizona Subclass"). Compl. ¶¶ 42-44. Plaintiffs seek equitable relief in the form of injunctive relief, restitution, disgorgement, and a declaratory judgment, as well as legal relief in the form of actual damages, calculated as the purchase price of Koi's Products.

What is notable, however, are the things that Plaintiffs' Complaint does *not* include. Plaintiffs do not plead that:

- they visited Koi's website;
- they read or saw any of Koi's advertising;
- they purchased all of the Products listed in their Complaint;
- they read any of Koi's labels—even the ones they purchased;

- they used any of the Products—even the ones they purchased; or
- anyone at Koi ever told them a misleading or fraudulent statement about Koi's products.

Furthermore, Plaintiffs' Complaint does not identify:

- any warranty statements—misleading, fraudulent, or otherwise—that were communicated by Koi or a third party;
- any unfair actions or business practices of Koi (other than the alleged mislabeling as a dietary supplement and misbranding as a drug);
- any physical harm sustained through use of Koi's products;
- any ineffective or missing ingredients in any Koi products; or
- how Koi's products are not effective.

## III.    LEGAL STANDARD

Under FED. R. CIV. P. 12(b)(6), a defendant is entitled to dismissal of an action if the plaintiff's complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Not all statements in a complaint are to be taken as true. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). A plaintiff's "legal conclusion [is] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). This includes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## IV.    ALL OF PLAINTIFFS' CLAIMS MUST BE DISMISSED, BECAUSE THEY ARE BASED ON THE FALSE PREMISE THAT KOI'S PRODUCTS ARE "ILLEGAL"

### A.    Plaintiffs assert false and unsupported legal conclusions that Koi's Products are illegally labeled and illegally misbranded

Plaintiffs' claims are spelled out in the Complaint's one-sentence second paragraph: "Defendant's Products, however, are illegal to sell." Compl. ¶ 2. In the factual allegations to the causes of action, and damages, Plaintiffs state that Koi's illegal products are the basis for their right to relief. The Complaint's "Factual Allegations" section makes repeated allegations about the illegality of labeling and the Products. Compl. ¶ 18 (mislabeling), ¶ 23 (misbranding), ¶ 30 (adulterated human food), ¶ 37 (adulterated and misbranded).

Plaintiffs plead that the illegality of the Products gives rise to some cause of action. But a plaintiff's legal conclusions are not entitled to a presumption of truth, and Plaintiffs' assertion of illegality is nothing more than a legal conclusion that is actually false. *See Iqbal*, 556 U.S. at 680. For example, Plaintiffs' UCL claim asserts unlawful, unfair, and fraudulent actions (Compl. ¶¶ 58-59, 63). Their FAL claim alleges illegality (Compl. ¶¶ 72, 74), as does their CLRA claim (Compl. ¶¶ 82, 84) and their ACFA claim (Compl. ¶¶ 128, 130). Plaintiffs' warranty claims also allege illegality (Compl. ¶¶ 90-91, 97, 106-107, & 116), along with Plaintiffs' declaratory judgment claim (Compl. ¶ 141).

Finally, Plaintiffs claim their damages are the purchase price of the Koi products they bought, and then state they would not have even purchased the product if they knew it was "not legally sold." Compl. ¶¶ 13-14. Per Plaintiffs' logic, their damages are entirely caused by the illegality of the Products.

Plaintiffs' pleadings rely on the false premise that Koi's Products are "illegal." This fatal flaw means that no part of their claims can be properly pleaded, and thus each claim should be dismissed with prejudice.

## B.    The FDA's statements are not law

Throughout the Complaint, Plaintiffs rely on statements made by the FDA about CBD and its addition to human and pet food products. But none of these statements are official action by the FDA. Instead, they are merely public statements by the FDA that are not law. Plaintiffs ask the Court to make law based

DEFENDANT KOI CBD, LLC'S MOTION TO DISMISS
CASE NO. 2:19-CV-10318-GW-AFMx

on a press release and a letter. Agency rulemaking—and its judicial review—does not work this way. The Supreme Court has established a legal test showing when a court should defer to an agency's interpretation, holding that judicial deference is appropriate where the agency's interpretation was not unreasonable, so long as Congress had not spoken directly to the specific issue in question. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-845 (1984).

Not any agency interpretation qualifies for *Chevron* deference by a court. Agency interpretations such as those found in "policy statements, agency manuals, and enforcement guidelines" all "lack the force of law [and] do not warrant *Chevron*-style deference." *Id.* at 587. Indeed, an agency's actions are only granted *Chevron* deference when the agency has demonstrated that its actions were taken in the exercise of its rulemaking authority, such as engaging "in the process of rulemaking or adjudication that produces regulations or rulings." *Sierra Club v. U.S. EPA*, 671 F.3d 955, 962 (9th Cir. 2012) (quoting *Chevron,* 467 U.S. at 843).

The FDA has not engaged in such activity here. Plaintiffs allege that "[t]he FDA has stated that CBD may not be labeled as a dietary ingredient or legally be contained within a dietary supplement." Compl. ¶ 18. This allegation is based on a questions-and-answers section on the FDA's website (the "Q&A")[7] and a warning letter sent to Koi (the "Warning Letter"),[8] both of which are decidedly *not* the product of formal rulemaking. Compl. ¶¶ 17-18. "A Warning Letter is informal and advisory . . . *FDA does not consider Warning Letters to be a final agency action* on which it can be sued." FDA, REGULATORY PROCEDURES MANUAL § 4-1-1 (Mar. 2010) (emphasis added).[9] "FDA warning letters are informal and advisory,

---

[7] FDA REGULATION OF CANNABIS AND CANNABIS-DERIVED PRODUCTS, INCLUDING CANNABIDIOL (CBD), https://www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derived-products-including-cannabidiol-cbd (last visited Jan. 29, 2020).

[8] Compl. ¶¶ 17-19.

[9] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/compliance-manuals/regulatory-procedures-manual (last visited Feb. 6, 2020).

6

**DEFENDANT KOI CBD, LLC'S MOTION TO DISMISS**
**CASE NO. 2:19-CV-10318-GW-AFMx**

and do not amount to an FDA action." *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1294 (E.D. Cal. 2012) (citing *Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996)).

Plaintiffs also rely on FDA statements made in the Warning Letter regarding language found at one time on Koi's website. Compl. ¶ 21. Plaintiffs never allege, however, that they ever visited the site or read those statements themselves. Regardless, this language was not authored or provided by Koi, it was found through links to a third party's blog and has since been removed.

The Q&A emerged in 2015 as a result of a convergence of states legalizing medical and adult use of *Cannabis* and the passage of the Agriculture Act of 2014 ("2014 Farm Bill"), which legalized hemp under agricultural pilot programs. *See* 7 U.S.C. § 5940. The Q&A, the Warning Letter, and the press announcement released on December 20, 2018 (the "Statement")[10] are not final rule-making authority, and they are not law. At most, the Q&A, the Warning Letter, and the Statement are guidance documents. "Guidance documents do not establish legally enforceable rights or responsibilities. They do not legally bind the public or FDA." 21 C.F.R. § 10.115(d)(1)). Simply put, interpretations found in a guidance document "lack the force of law." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). A Central District court has recognized this, finding that—regardless of the warning letters send by the FDA to the defendants—because the FDA had not completed the rulemaking process and thus the agency could still change its position, then the court could not rule on the legality of the defendant's conduct before the FDA had done so. *Summit Tech.*, 922 F. Supp. at 306.

Plaintiffs rely on the bald legal conclusion that Koi's activities are illegal, without pleading a single statement showing that the FDA's activities have the force of law. In fact, it is clear from available evidence that the FDA has not taken

---

[10] *Supra* fn. 1.

any final action on the issues of adding CBD to food or the marketing of CBD as a dietary supplement because it is currently in the rulemaking process. The Statement—the underlying relevant portions of which have been made since 2015—identified that it was not a final rule because the FDA anticipated taking *future* steps to address CBD in food and dietary supplement products more formally, stating "we intend to hold a public meeting *in the near future*," and "[w]e're committed to *pursuing* an efficient regulatory framework." *See supra* fn. 1 (emphasis added). One federal court has stayed a purported class action and observed, "[r]egulatory oversight of CBD ingestible products, including labeling, is currently the subject of rulemaking at the FDA." *Snyder*, 2020 WL 42239, at *6.

The Complaint repeatedly references the Update, Warning Letters, and the Statement as if they were law. But they are not law. And because they are the bedrock of all of Plaintiffs' claims, those claims must be dismissed with prejudice.

## C.    Koi's Products are not drugs

Plaintiffs plead that Koi's Products are unapproved new drugs that are mislabeled and misbranded drugs. Compl. ¶¶ 20-23. This is simply a variant on the bare legal conclusion set forth by Plaintiffs that Koi's activities are illegal. But none of Koi's Products are a drug. Koi does not market or sell any of the Products as a drug. In order to do so, Koi would have to apply for FDA approval of the Products as drugs. 21 C.F.R. § 314 *et seq.* Koi has not done so, and nothing in the Complaint alleges otherwise. Instead, the Complaint proclaims without factual support that the Products are mislabeled and misbranded drugs because no "dosage" or instructions for use were provided. Compl. ¶ 20-23.

Plaintiffs must plead that Koi intended to sell or market the Products as drugs. Plaintiffs attempt to do this by referencing FDA statements in the Warning Letter or about CBD in general. But nothing in the pleadings supports this allegation. Indeed, the FDA's statements do not support Plaintiffs' assertion that any of the Products are a drug—a fundamental component of Plaintiffs' claims that

the Products were misbranded, mislabeled, fraudulent, or unfair drugs. Plaintiffs cannot plead that Koi had these intentions, and thus Plaintiffs' pleading did not and cannot support those causes of action. They must be dismissed with prejudice.

Further, the Complaint alleges that the CBD in Koi's Products is an active ingredient in a drug product. Compl. ¶ 1, 19. To support this contention, Plaintiffs point to the FDA's approval of Epidiolex as a drug and tries to conflate this with CBD. Compl. ¶ 19, n.4. The FDA has approved Epidiolex as a drug.[11] But, as explained by the FDA, Epidiolex is marijuana-based oral solution that contains a purified formulation of CBD.[12] But Koi's Products are not made with purified, isolated CBD, they are a full-spectrum hemp extract—meaning they include not only CBD but various cannabinoids, terpenes, and other hemp-extract substances not found in Epidiolex.[13] But nothing in the FDA's statement addresses hemp-extract products using a broad spectrum of the nutritive parts of the hemp plant like Koi's Products. In fact, in its statements, the FDA fails to distinguish between hemp-extract and CBD-isolate products. And since the FDA has not completed the regulatory rule-making process, the FDA's opinion regarding hemp-extract products cannot be predicted—or properly pleaded.

The Complaint also uses the FDA statements and Warning Letter to incorrectly plead that Koi's Products are mislabeled, misbranded, and that they "do not meet the definition of dietary supplement." Compl. ¶¶ 6, 18-19, 23. Plaintiffs also allege that Koi's labeling and branding misled consumers regarding ingredients and effectiveness. Compl. ¶¶ 63, 73. And finally, Plaintiffs allege that Koi's Products are "adulterated foods" because a drug has been added to them.

---

[11] *See* FDA APPROVES FIRST DRUG COMPRISED OF AN ACTIVE INGREDIENT DERIVED FROM MARIJUANA TO TREAT RARE, SEVERE FORMS OF EPILEPSY, https://www.fda.gov/news-events/press-announcements/fda-approves-first-drug-comprised-active-ingredient-derived-marijuana-treat-rare-severe-forms (last visited Jan. 29, 2020).

[12] *Id.* ("This is the first FDA-approved drug that contains a purified drug substance *derived from marijuana*.") (emphasis added).

[13] WHAT IS CBD OIL?, https://koicbd.com/what-is-cbd-oil/ (last visited Feb. 7, 2020).

9

Compl. ¶¶ 25-30, 32-35. In making these bald assertions, the Complaint is merely parroting the FDA's statement that CBD is excluded from the definition of dietary supplement. But the FDA's conclusion that CBD is excluded from the Federal Food, Drug, and Cosmetic Act's, ch. 675, 52 Stat. 1040 (1938) (codified as amended at 21 U.S.C. § 301 et seq.) ("FD&C") definition of dietary supplement is not an official action. It is merely informal, non-binding guidance, and, as discussed previously, the Court is not required to show any deference to such statements. The Complaint pleads that the Products are a drug and not a dietary supplement. These allegations are not plausible, as Plaintiffs cannot plead facts showing Koi intends to sell or market the Products as drugs. The reason for this is simple: they are not drugs.

## V.    PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR IMPROPER FACTUAL BASIS

### A.    Plaintiffs improperly plead the factual basis for the UCL claim

To bring a claim for violation of California's UCL, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Svcs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003). Plaintiffs allege that Koi's actions are simultaneously unlawful, unfair, and fraudulent.

#### 1.    Plaintiffs cannot show Koi engaged in unlawful business practice

As discussed above, although Plaintiffs wish to rely on FDA language in repeatedly making the attention-grabbing assertion that Koi's Products are "illegal," this characterization is an inaccurate, legal conclusion. *See supra* Section IV. Plaintiffs do not identify with any specificity what the unlawful practices were. Instead, Plaintiffs merely list four statutes and states that Koi violates them. Compl. ¶ 58. This is a legal conclusion not a factual assertion, and the court is not required to assume it is true. *Iqbal*, 556 U.S. at 680. And, in fact, it is not true, as Koi's

10

actions are not forbidden by law. *See supra* Section IV. Since Plaintiffs do not properly plead a claim that Koi engaged in unlawful business practices, their UCL claim should be dismissed with prejudice.

### 2. Plaintiffs cannot show Koi engaged in unfair business practice

Plaintiffs assert that Koi conducted "unfair" business practices, but they fail to plead plausible facts to support this conclusory allegation. Instead, Plaintiffs merely state that Koi's conduct was "immoral, unethical, unscrupulous, or substantially injurious," without defining those terms or providing any examples or context regarding what acts or omissions by Koi constitute such conduct. Compl. ¶ 59. Plaintiffs reallege that Koi violated four statutes but do not indicate what acts or omissions by Koi constitute violations of those statutes. Compl. ¶ 60. Plaintiffs are making a legal conclusion not a factual assertion, and the court is not required to assume it is true. *Iqbal*, 556 U.S. at 680. Similarly, Plaintiffs allege that the injury caused by Koi's (unspecified) actions was "substantial, and not outweighed by benefits to consumers," without any further specificity. Compl. ¶ 61. This represents simply another conclusory statement. Since Plaintiffs fail to properly allege that Koi engaged in unfair business practices, and instead make only "threadbare recitals of the elements" of their claims, those claims should be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

### 3. Plaintiffs cannot show that Koi engaged in fraudulent conduct

Pleadings alleging fraud trigger a heightened pleading standard. A plaintiff who alleges fraud must plead "with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Thus, "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When fraud allegations fail to meet these heightened pleading requirements, they must be "disregarded" or

"stripped from the claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). A plaintiff must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation" in order to avoid dismissal for inadequacy under Rule 9(b). *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1097 (C.D. Cal. 2012) (citation omitted). It is not enough to allege falsity, "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1043 (C.D. Cal. 2008). Further, Plaintiffs' pleadings must be "specific enough to give defendants notice of the particular misconduct." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

But Plaintiffs do not do this. Instead, they rely on the faulty "illegality" argument. Beyond this, Plaintiffs accuse Koi of acting "falsely, deceptively, and unlawfully" without explaining the "who, what, when, where, [or] how." Compl. ¶ 64; *see Kearns*, 567 F.3d at 1124. Even though they are bringing claims against a corporation, Plaintiffs fail to identify any individuals who made the allegedly fraudulent representations, what was said or written, and when or where it was said or written. *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016).

Plaintiffs' Complaint is replete with omissions that doom their case. Plaintiffs never states where—or even *if*—they read the allegedly false claims. Since Plaintiffs fail to identify the "who, what, when, where, and how" of their claim, the heightened pleading requirements of Rule 9(b) are not met, and their claims should be dismissed with prejudice.

## B.    Plaintiffs improperly plead the factual basis for the FAL claim

Plaintiffs make allegations that Koi both mislabeled and misadvertised their Products. The FAL makes it unlawful for any corporation that has intent to perform services or induce the public to enter into an obligation relating those services to "make or disseminate" any statement about those services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care

12

should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. "To prevail on a claim under the FAL, a plaintiff must prove that (1) the defendant made untrue or misleading statements and (2) the defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading." *Essence Imaging, Inc. v. Icing Images LLC*, No. 2-13-cv-5449-CAS(PLAx), 2014 WL 1384028, at \*2 (C.D. Cal. Apr. 9, 2014). And to sustain allegations of mislabeling, a plaintiff must show: (1) the labeling statements violate labeling regulations; (2) actual reliance on the labeling statements when deciding to purchase the product(s); and (3) economic injury. *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2016 WL 4502528, at \*2 (N.D. Cal. Aug. 29, 2016) (citing *Kwikset Corp. v. Superior Ct.*, 246 P.3d 310, 877, 885 (Cal. 2011).

Plaintiffs have not properly pleaded these elements. Plaintiffs again rely on the "illegality" of Koi's labeling, which is inaccurate. *See supra* Section IV. Further, the Complaint never alleges that Plaintiffs ever read the labels on the Products, much less relied on them when making their purchases. In fact, the Complaint alleges that Plaintiff Good only purchased one of the Products. Compl. ¶ 14. The Complaint never even attempts to allege facts that indicate Koi "knew or should have known" about untrue or misleading statements, though none existed. Plaintiffs' assertions in their FAL claim are unwarranted allegations, do not give rise to a plausible claim, and should be dismissed with prejudice.

## C.    Plaintiffs improperly plead the factual basis for the CLRA claim

"[T]o bring a CLRA claim, the plaintiff must show that: (1) the defendant's conduct was deceptive; and (2) that the deception caused defendant to be harmed." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015). A CLRA claim that is based on fraud requires reliance. *MacRae v. HCR Manor Care Svcs.*, No. SACV 14-0715-DOC (RNBx), 2014 WL 3605893, at \*3 (C.D. Cal. July 21, 2014).

As noted previously, Koi's practices are not unlawful. *See supra* Section IV. Apart from inaccurate claims of the "false" mislabeling and advertising of Koi's

13

Products, the Complaint makes no allegation of unlawful practices. Compl. ¶¶ 73-78. The Complaint cannot show exposure to the alleged unlawful business practice because it fails to allege that Plaintiffs read any labels on Koi Products, or even that Plaintiffs read the label on the product(s) they purchased. Plaintiffs do not allege that they observed any advertising, much less where and how they observed it, or what the advertising stated. Plaintiffs do not even allege they visited Koi's website. Without unlawful practices, Plaintiffs cannot plausibly plead either exposure to or damages from unlawful practices. And in addition, Plaintiffs fail to even plead reliance, much less assert plausible facts that would establish it. Plaintiffs do not identify what they relied on when purchasing the Koi product(s), the source of that information, or when they learned it.

Finally, the Complaint lists four statutes and makes a blanket statement that Koi violated them. Compl. ¶ 82. This is insufficient. The Complaint does not identify plausible facts that demonstrate Koi's alleged violations. The Complaint states that Plaintiffs were induced to purchase and use Koi Products—though they only plead that they purchased some of the Products and never allege they used them—but do not identify what induced them to "purchase and use" the Products. Compl. ¶ 82. The Complaint does not identify statements, advertisements, or other specific action by Koi that would support this claim. Plaintiffs' CLRA allegations offer nothing more than threadbare assertions and unwarranted inferences that fail to state a claim for relief, and their CLRA claim should be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

### D. Plaintiffs fail to plead a factual basis to support claims for breach of express warranty in California or Arizona

In order to succeed on a claim for breach of express warranty in California, a plaintiff must prove that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90

F. Supp. 3d 919, 984 (C.D. Cal. 2015).

But not every representation about a product constitutes a warranty. *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012). In order to constitute a warranty, representations regarding a product "must be specific and unequivocal." *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

In Arizona, an express warranty is created by "any description of the goods" or "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." ARIZ. REV. STAT. § 47-2313(A)(1)-(2). But "any affirmation that forms the basis of an express warranty must be between the seller and the buyer." *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 386 (C.D. Cal. 2018) (citation omitted). "In other words, a seller is not bound by an express warranty unless 'it was part of the basis of the bargain of a sales contract.'" *Id.* (citation omitted).

Here, Plaintiffs claim an express warranty was created through Koi's labels and advertising. Compl. ¶ 89, 105. But the Complaint never once alleges that Plaintiffs ever read a label, or which label they read, or what the contents of the label were. The Complaint never identifies even a single person that Plaintiffs spoke with about Koi's Products, their labels, their ingredients, or any warranties—express or otherwise—whether that person be a representative of Koi or some third party. The Complaint also does not specify what Koi advertising Plaintiffs observed, what medium it was presented in (television, print, radio, internet, etc.), when they observed it, the contents of the advertisement, or whether that advertising was created and distributed by Koi or by some third party. The Complaint does not offer one single "specific and unequivocal written statement" that would form an express warranty, and "mere product descriptions" are not warranties. *Maneely*, 108 F.3d at 1181; *Littlehale*, 2012 WL 5458400, at *1.

Instead, the Complaint states that the labels are marked "dietary

15

supplement" (but not alleging if, or when, Plaintiffs actually read this), incorrectly applies FDA guidance, and claims that Plaintiffs have been harmed. Compl. ¶¶ 18-19, 94, 110. The Complaint fails to properly plead a single assertion upon which their claim is based and instead states that the Products "do not and cannot provide the promised benefits" and, again, incorrectly states that the Products are "illegally" labeled. Compl. ¶¶ 90, 106. But a plaintiff's misapplication of non-binding FDA guidance does not create a breach of express warranty.

As for the remaining elements, Plaintiffs fall back on recitations of the elements and legal conclusions masquerading as factual allegations. The Complaint states that "affirmations and promises" were part of the "basis of the bargain," without attempting to explain how. Compl. ¶ 89, 105. No mention is made of Plaintiffs reading the label, what specific written "affirmations and promises" Plaintiffs believed were part of the basis of the bargain, or that Plaintiffs chose Koi's product over another brand or product because of the unspecified "affirmations or promises." And the Complaint states that Plaintiffs did not purchase or use all of the Products listed in the Complaint. Compl. ¶¶ 13-14. There can be no "benefit of the bargain" for any of the unpurchased and unused Products.

Finally, Plaintiffs' pleadings for these claims are deficient. Despite claiming damages under two separate statutes from two separate states, the substance of the claims as pleaded in the Complaint are exactly—word for word—identical. *Cf.* Compl. ¶¶ 89-94 and 105-110. Because of these failings, both of Plaintiffs' claims for breach of express warranty must be dismissed with prejudice.

### E.    Plaintiffs fail to plead a factual basis to support claims for breach of implied warranty of merchantability in California or Arizona

To prove breach of the implied warranty of merchantability in California, the plaintiff must prove that (a) at the time of the purchase, the defendant was in the business of selling the product, (b) the product was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purposes for

which the product is used, or did not conform to the quality established by the parties' prior dealings or by usage of trade, (c) the plaintiff took reasonable steps to notify the defendant within a reasonable time that the product did not have the expected quality, (d) the plaintiff was harmed, and (e) the failure of the product to have the expected quality was a substantial factor in causing the plaintiff's harm. *Andrade v. Pangborn Corp.*, No. C 02-3771 PVT, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (citing CACI 1231; CAL. COM. CODE § 2314).

"The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1114 (S.D. Cal. 2017). The implied warranty of merchantability "does not impose a general requirement that goods *precisely* fulfill the expectation of the buyer," an implied warranty of merchantability must only "provide[] for a *minimum* level of quality." *Am. Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal. App. 4th 1291, 1296 (emphasis added).

In Arizona, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." ARIZ. REV. STAT. § 47-2314(A). Further, "[g]oods to be merchantable must be at least such as: (3) [a]re fit for the ordinary purposes for which goods are used; and . . . (6) [c]onform to the promises or affirmations of fact made on the container or label if any." ARIZ. REV. STAT. § 47-2314(B). Thus, if a product breaches the implied warranty, that means it "did not possess even the most basic degree of fitness for ordinary use." *Oddo v. Arcoaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS(Ex), 2017 WL 372975, at *15 (C.D. Cal. Jan. 24, 2017).

The Complaint never provides plausible allegations of material fact, instead providing a bare-bones recitation of the elements. Plaintiffs assert—without explanation—that Koi's Products provide no benefits. Compl. ¶ 100, 116. But, again, this is another conclusory allegation couched as a factual statement and fails to plausibly state a claim for which relief can be granted. The Complaint makes no

17

allegation as to what benefits were expected and what benefits were not received. Plaintiffs make no facially plausible allegation that Koi's Products are not the same quality as others or fit for the ordinary purpose intended. Plaintiffs do not allege that the Products failed to conform to prior experience, despite at least one plaintiff having purchased multiple (unnamed) Koi Products. Compl. ¶ 13. And neither of the Plaintiffs allege they even *used* any of the Products.

Plaintiffs' Complaint also fails to plead that they provided any notice—to Koi, the third-party retailers they made the purchase(s), or any other party—that there were any problems with the product(s) they purchased. And while Plaintiffs were allegedly harmed in the full amount of the purchase price, the Complaint acknowledges that they believe the Products have some value, as they state that they still would have bought the Products but "would not have paid as much" if they only knew more before purchasing. Compl. ¶¶ 38, 41. Finally, Plaintiffs claim the goods they received did not meet the "promises and affirmations" on the label, and they are not fit for the purpose of providing the benefits promised. Compl. ¶ 101, 117. But Plaintiffs never identify what those "promises and affirmations" are, or what portion of the label makes those "promises and affirmations." Plaintiffs' Complaint never even states that they read a label, or a website, or a fact sheet, or any other documents that would make "promises and affirmations."

Even if Koi did not precisely meet Plaintiffs' expectation, Plaintiffs do not plausibly allege that all the Products failed to provide a minimum level of quality. And, as with their claims for breach of express warranty, Plaintiffs' claims for breach of implied warranty are doubly deficient. Again, despite claiming damages under two separate statutes from two separate states, the substance of the claims as pleaded in the Complaint are exactly—word for word—identical. *Cf.* Compl. ¶¶ 97-102 and 113-118. As a result, Plaintiffs' claim for breach of implied warranties of merchantability should be dismissed with prejudice.

18

### F.    Plaintiffs fail to plead a factual basis to support an ACFA claim

The ACFA "prohibits deception, fraud, misrepresentation, or concealment of a material fact 'in connection with the sale or advertisement of any merchandise.'" *Rich v. Bank of Am., N.A.*, 666 Fed. App'x 635, 638 (9th Cir. 2016). (quoting ARIZ. REV. STAT. § 44-1522). "The elements of an ACFA violation are 'a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury.'" *Id*. (citation omitted).

Plaintiffs' claim under the ACFA is based on the incorrect position that Koi's Products are illegal. Plaintiffs claim that Koi's advertisements and labeling led consumers to believe Koi's Products were legal, when in fact they were illegal. Compl. ¶ 126-132. But, as addressed in Section IV, this is not accurate. And Plaintiffs' Complaint fails to allege that Plaintiffs read any advertisements, or if Plaintiffs even saw any advertisements. Plaintiffs' state the Products' labels included misrepresentations, omissions, and concealments, (Compl. ¶ 128) but the Complaint does not allege that Plaintiffs read the label for all Products, or even read the label(s) for the Product(s) they purchased. Plaintiffs do not even allege that they visited Koi's website, read the labels off the packaging, or read the statements in advertising. Plaintiffs further plead that they relied on these statements, but they do not identify what they relied on when purchasing the Koi product(s), the source of that information, or when they learned it.

Plaintiffs then allege their damages are the purchase price of the Products. Compl. ¶ 135. But this is a vague and undefined claim, as Plaintiffs both fail to identify which product(s) were purchased and concede that they would still have purchased the Products, just for a lower (unspecified) price. Compl. ¶ 38, 41, 135.

Plaintiffs' ACFA allegations offer nothing more than threadbare assertions and unwarranted inferences that fail to state a claim for relief, and their ACFA claim should be dismissed with prejudice. *Iqbal*, 556 U.S. at 678.

19

### G.    Plaintiffs factual basis to support a declaratory judgment fails

Plaintiffs seek a declaratory judgment under 21 U.S.C. § 2201 (the "Declaratory Judgment Act"). Compl. ¶¶ 138-143. But the pleadings again assert that Plaintiffs are entitled to this relief due to the "illegal" and "unlawful" nature of Koi's actions. Compl. ¶¶ 141-142. This is incorrect, as discussed in Section IV. Thus, Plaintiffs' pleadings fail to properly allege a right to relief under the Declaratory Judgment Act and must be dismissed with prejudice.

## VI.   EVEN IF PLAINTIFFS HAD PROPERLY PLEADED CLAIMS UNDER THE UCL, FAL, AND CLRA, THOSE CLAIMS ARE PRECLUDED BECAUSE THEY ALSO ALLEGE CLAIMS WHICH PROVIDE AN ADEQUATE REMEDY AT LAW

"[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75-76 (1992). The Ninth Circuit is clear: "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). Thus, a plaintiff seeking legal remedies is not entitled to equitable remedies for the same conduct. *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2016 WL 7486600, at *13-14 (C.D. Cal. Sept. 27, 2016). Where the factual predicates for plaintiff's legal and equitable claims are the same, then the equitable claims are not an alternative relief, but duplicative of the legal claims. *Loo v. Toyota Motor Sales, USA, Inc.*, No. 8:19-cv-00750-VAP (ADSx), 2019 WL 7753448, at *13 (C.D. Cal. 2019).

"UCL, FAL . . . [and] restitution and injunctive relief claims under the CLRA are equitable claims" and must be dismissed with prejudice if the plaintiff has an adequate remedy at law. *Madrigal v. Hint, Inc.*, CV 17-02095-VAP (JCx), 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017). A plaintiff who sufficiently pleads legal claims such as breach of warranty, which allows that plaintiff to recover damages, cannot seek equitable relief under California's consumer-protection laws. *Stockinger v. Toyota Motor Sales USA, Inc.*, LACV 17-00035-

20

VAP (KLSx), 2017 WL 10574372, at *22 (C.D. Cal. Jul. 7, 2017).

Plaintiffs bring claims under the UCL, the FAL, and the CLRA. Under the UCL, they seek only equitable relief in the form of injunctive relief and restitution.[14] Compl. ¶¶ 67-68. Under the FAL, they seek only equitable relief in the form of injunctive relief, restitution, and disgorgement.[15] Compl. ¶¶ 77-78. Under the CLRA Plaintiffs seek only equitable relief in the form of injunctive relief. Compl. ¶¶ 86. By contrast, Plaintiffs allege claims for breach of express warranties and breach of implied warranties of merchantability—both claims seek monetary damages at law. Compl. ¶¶ 94, 102, 110, and 118. It is undisputed that the latter claims are claims at law which would allow Plaintiffs to recover monetary damages. Because Plaintiffs' equitable claims rely on the same facts as the legal claims, they are duplicate causes of action and must be dismissed with prejudice.

## VII. EVEN IF PLAINTIFFS HAD PROPERLY PLEADED THEIR CLAIMS, THE 2018 FARM BILL EXPRESSLY PREEMPTS THE STATUTES RELIED ON IN PLAINTIFFS' COMPLAINT

Because Koi's Products are hemp derivatives, meet the definition of legal hemp products under the 2014 Farm Bill, are lawfully produced under the 2014 Farm Bill, and are moving in interstate commerce in under the 2018 Farm Bill, the statutes Plaintiffs seek to apply against the Products are expressly preempted.

### A.    Express preemption applies to the 2018 Farm Bill

By virtue of the U.S. Constitution's Supremacy Clause, federal law can preempt and displace state law through express preemption. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003). "Express preemption exists where Congress enacts an explicit statutory command that state law be displaced." *Id.*

Here, the 2018 Farm Bill explicitly states that "[n]o State . . . shall prohibit

---

[14] Though restitution may be either a legal or equitable remedy, when it seeks to restore to the plaintiff funds or property in the defendant's possession, it is a claim in equity. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).

[15] "Disgorgement is an equitable remedy . . ." and a district court has discretion to deny it when the plaintiff has an adequate remedy at law. *Laparade v. Ivanova*, 116 Fed. App'x 100, 104 (9th Cir. 2004).

the transportation or shipment of hemp or hemp products . . . through the State." 2018 Farm Bill, Pub. L. No. 115-334 § 10114, 132 Stat. 4490, 4914 (2018). Plaintiffs allege that the Products are available "in massive quantities . . . all over the country." Compl. ¶ 8. In their Complaint, Plaintiffs seek to infringe on the sale of Koi's products "all over the country." If the state-law arguments made in the Complaint were enforced by the Court, the result would be the infringement on transportation of hemp-derived products. Since federal law preempts such action, Plaintiffs' claims must be dismissed with prejudice.

### B. Plaintiffs' proposed application of the statutes invoked in each of Plaintiffs' claims is expressly preempted

Without question, Koi's Products are hemp. The federal definition of hemp specifically includes "all derivatives, extracts, [and] cannabinoids" with not greater than 0.3% THC on a dry weight basis. 7 U.S.C. § 1639o(1). The Products are manufactured with hemp extract and contain a variety of hemp-derived cannabinoids, including CBD, but they do not contain more than 0.3% THC on a dry-weight basis.[16] Koi's Products constitute hemp and federal preemption means that no state may interfere with them in interstate commerce.

But Plaintiffs wish to hold Koi liable under five California statutes and three Arizona statutes. The statutes do not specifically regulate hemp products, but Plaintiffs seek to expand their application to impose liability against Koi for marketing and selling the Products in interstate commerce.

Plaintiffs' proposed application of the statutes is expressly preempted. No state is permitted to have its statutes applied in a way that would inhibit interstate transportation of hemp-derived products. *See* 2018 Farm Bill, Pub. L. No. 115-334 § 10114, 132 Stat. 4490, 4914. Due to express preemption by the 2018 Farm Bill, Plaintiffs' claims must be dismissed with prejudice.

---

[16] KOI CBD ABOUT US, https://koicbd.com/about-us/ (last visited Feb. 4, 2020).

DEFENDANT KOI CBD, LLC'S MOTION TO DISMISS
CASE NO. 2:19-CV-10318-GW-AFMx

### C. Plaintiff's claims are also preempted because the United States holds exclusive jurisdiction to enforce the FD&C

The United States holds exclusive jurisdiction for the enforcement and to restrain violations of the FD&C. 21 U.S.C. § 337(a). Acknowledging the power of this statute, the Supreme Court stated that the FD&C "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance . . . ." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). The Ninth Circuit has unequivocally recognized that "private enforcement of the statute is barred." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). In *Perez*, the Ninth Circuit—recognizing that the plaintiff's state-law claim was in fact an attempt to enforce the FD&C—held that the state-law claim was preempted. Here, Plaintiff claims that Elixinol's Products are mislabeled as dietary supplements. But "dietary supplements" is a term defined by the FD&C. 21 U.S.C. § 321(ff); Compl. ¶ 19. Without the FD&C definition of dietary supplements, Plaintiff would have no violation to allege. This means that Plaintiff's claims rely on the FD&C, and they do not "rel[y] on traditional state tort law which had predated the federal enactments . . . ." *Buckman*, 531 U.S. at 353. Thus, only the federal government may file suit for noncompliance. *Id.* at 349 n.4.

## VIII. EVERY ONE OF PLAINTIFFS' CLAIMS IS PREMATURE AND THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS OR, IN THE ALTERNATIVE, STAY ALL PROCEEDINGS

Even if the Court declines to dismiss Plaintiffs' claims under FED. R. CIV. P. 12(b)(6), it should dismiss them based on the primary jurisdiction doctrine. Alternatively, if Plaintiffs' claims survive, the Court should stay all proceedings until the FDA promulgates a final rule regarding the marketing—including labeling—of hemp-extract products. At least one federal court has already issued a stay under the primary jurisdiction doctrine. *See Snyder*, 2020 WL 42239, at *7.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the

23

special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine "is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "[I]t is a doctrine used by the courts to allocate initial decision making responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflicts exist." *Id*.

The Ninth Circuit recognizes four factors for primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781. "When a district court determines that primary jurisdiction applies, it enables a 'referral' of the issue to the relevant agency," meaning, in practice, that a court should dismiss the case or stay the proceedings. *Clark*, 523 F.3d at 1115.

Here, the Court should invoke the primary jurisdiction doctrine. First, each of Plaintiffs' claims turn on whether CBD may be marketed or sold in food and dietary supplement products under certain California laws. Second, the issue of CBD being marketed and sold in food and dietary supplement products clearly falls within the special competence of the FDA. Congress committed the issue to the FDA through the 2018 Farm Bill, which reserves in the FDA authority "to promulgate Federal regulations and guidelines that relate to the production of hemp." 7 U.S.C. § 1639r(c)(1),(3)(A)-(B); 2018 Farm Bill, Pub. L. 115-334 § 10113, 132 Stat. 4490, 4910.

The FDA agrees, as the Statement indicates, that "Congress explicitly preserved the agency's current authority to regulate products containing cannabis or cannabis-derived compounds," and that the FDA will continue "providing

potential regulatory pathways for products containing cannabis and cannabis-derived compounds." *See supra* fn.1.

Application of the Ninth Circuit's specific factors also indicates primary jurisdiction lies in the FDA. The *Snyder* court in Florida, analyzing the same factors, recently reached this conclusion and stayed those proceedings "until the FDA completes its rulemaking regarding . . . hemp-derived ingestible products." *Snyder*, 2020 WL 42239, at *7. The court reasoned that the parties would benefit from the FDA's final regulatory action, because the Update and the Statement currently provide little guidance. *Id.* The court also noted not only that the issue of CBD in food and dietary supplement products is subject to the FDA's regulatory authority, but also that the FDA is already exercising its authority, which will ultimately provide uniformity in administration. *Id.*

This case is identical to *Snyder*. At the heart of both cases is the issue of marketing and selling CBD in food and dietary supplement products. The FDA is aware of the issue and has expressed interest and regulatory intent. *See Nutrition Distribution, LLC v. IronMag Labs, LLC*, 723 F. App'x 397, 399 (9th Cir. 2018). The reasons that existed in *Snyder* for the application of the primary jurisdiction doctrine exist here. The Court should invoke the primary jurisdiction doctrine to dismiss Plaintiffs' claims without prejudice and refer the underlying issue of CBD in food and dietary supplement products to the FDA. Alternatively, as in *Snyder*, the Court should stay all proceedings "until the FDA completes its rulemaking regarding the marketing, including labeling, of hemp-derived ingestible products." *Snyder*, 2020 WL 42239, at *7.

## IX.    CONCLUSION

For these reasons, Koi asks the Court to grant its Motion to Dismiss, and to dismiss each of Plaintiffs' claims with prejudice, or, in the alternative, stay the proceedings, and grant any additional relief to which it is justly entitled.

This motion is made following the conference of counsel pursuant to Local

25

1  Rule 7-3 which took place on February 5, 2020. Plaintiffs' counsel agreed to waive

2  objection to the 7-day requirement under the Local Rule.

3  Dated: February 7, 2020.                Respectfully submitted,

4

5                                          By:  */s/ Martin E. Rose*

6                                          Martin E. Rose
                                           Sean M. Whyte
7
8                                          Attorneys for Defendant
                                           KOI CBD, LLC
9

10
    0143785.0727773   4849-5288-9267v5
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT KOI CBD, LLC'S MOTION TO DISMISS
CASE NO. 2:19-CV-10318-GW-AFMx**